**Jack Allen DALE, Petitioner–Appellee,**

v.

**Glenn HAEBERLIN, Acting Warden, Kentucky State Penitentiary, Respondent–Appellant.**

**No. 88–5640.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1989.

Decided July 3, 1989.

Rehearing Denied July 31, 1989.

Rehearing and Rehearing En Banc Denied Sept. 7, 1989.

---

J. David Niehaus, Public Defender, Frank W. Heft, Jr. (argued), Louisville, Ky., for petitioner-appellee.

Frederic J. Cowan, Atty. Gen., Robert W. Hensley, Asst. Atty. Gen. (argued), Frankfort, Ky., for respondent-appellant.

Before WELLFORD and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Respondent, Glenn Haeberlin, the acting warden of the Kentucky State Penitentiary, appeals from a district court order granting prisoner Dale's petition for a writ of habeas corpus. The district court found that the Kentucky state courts violated the federal Constitution's *ex post facto* clause in sentencing Dale. Finding the district court's *ex post facto* analysis to be erroneous, we reverse.

## I.

On the night of October 28, 1984, Dale was arrested in connection with the robbery of a gas station/convenience store in Jefferson County, Kentucky. Dale was charged with robbery in the first degree (Ky.Rev.Stat. § 515.020) and with being a convicted felon in possession of a handgun (Ky.Rev.Stat. § 527.020). At a jury trial, the jury found Dale guilty of the robbery charge, and recommended a sentence of fifteen years. In connection with the possession charge, the prosecution introduced evidence that Dale had been convicted of two felony charges in 1976. The jury found Dale guilty of the possession charge and recommended a five-year sentence.

As is appropriate under Kentucky law, the trial then moved to a second stage, in which the jury had to determine whether Dale's sentence should be enhanced due to his being a persistent felony offender.[1]

---

1. According to Ky.Rev.Stat. § 532.080:

(1) When a defendant is found to be a persistent felony offender, the jury, in lieu of the sentence of imprisonment assessed under KRS 532.060 for the crime of which such person presently stands convicted, shall fix a sentence of imprisonment as authorized by subsection (6) of this section....

(2) A persistent felony offender in the second degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of one (1) previous felony....

(3) A persistent felony offender in the first degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of two (2) or more felonies....

. . . .

(6) A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows:

(a) if the offense for which he presently stands convicted is a Class A or Class B felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than twenty years nor more than life imprisonment ....

Dale was charged with and convicted of robbery in the first degree, which is a Class B felony under Ky.Rev.Stat. § 515.020.

The court instructed the jury that only the robbery conviction could be enhanced. Over the defendant's objections, the court allowed the prosecution to introduce evidence of Dale's two 1976 convictions—previously used to help prove the felon in possession charge—to aid in establishing Dale's status as a persistent felony offender. The prosecution also offered uncontested evidence of three 1974 convictions. The jury found Dale to be a persistent felony offender in the first degree and enhanced his robbery sentence to twenty-five years. The judge ordered that the twenty-five year robbery sentence and the five-year felon in possession sentence be served concurrently.

Dale appealed directly to the Kentucky Supreme Court, arguing that the trial court's decision permitting the prosecution to use Dale's 1976 convictions in both the substantive and enhancement stages contravened Kentucky law as established by *Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980). The Kentucky Supreme Court affirmed the trial court, expressly holding that it overruled its previous *Boulder* opinion to the extent that *Boulder* prohibited the use of a prior conviction both to prove felon status on a possession charge and to enhance a separate offense (robbery, in Dale's case). *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky.1986). The court held that impermissible double enhancement occurred *only* where the prosecution used a prior conviction to prove the defendant's status for purposes of a felon in possession charge, and then used the same prior conviction to enhance the felon in possession sentence.

Arguing that the Kentucky Supreme Court violated the *ex post facto* clause of the Constitution (article I, section 10) by changing relevant Kentucky law and by applying that changed law retroactively, Dale petitioned the Kentucky Supreme Court for a rehearing. The Kentucky court denied this petition. After having thus exhausted his state remedies, Dale petitioned the United States Supreme Court for relief, but that Court denied his petition for certiorari. *Dale v. Kentucky*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987).

Dale then petitioned the United States District Court for the Western District of Kentucky for a writ of habeas corpus. The district court found in petitioner's favor, and the respondent appeals.

II.

Before determining whether the Kentucky Supreme Court violated the Constitution by retroactively applying an unanticipated change in state law, we must be certain that the opinion in *Dale* actually changed existing Kentucky law. Petitioner consistently has maintained that until the Kentucky Supreme Court issued its opinion in his case, the relevant principle of state law was contained in *Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980). The defendant in *Boulder* was charged with both assault and possession of a handgun by a convicted felon. A jury found him guilty of assault and, because he had been convicted of a felony in 1976, guilty of being a felon in possession. At the separate, subsequent enhancement proceedings, the jury enhanced both the assault and possession sentences based on the 1976 conviction. The jury found the defendant to be a second-degree persistent felony offender. On appeal, the Kentucky Supreme Court reversed the assault conviction as having been grounded upon misleading instructions. Additionally, the court disallowed the enhancement of the possession offense, concluding that the same conviction could not prove both felon status and justify enhancement of the possession charge. Before sending the case back for a new trial on the assault charge, however, the court also made clear that, "[h]aving used the status as a convicted felon to convert otherwise non-criminal activity into a crime, the Commonwealth may not be permitted to use it to enhance the penalty on the first degree assault charge." *Id.* at 618.

While this language would seem to support Dale's argument that existing law prevented the trial court in his case from using his 1976 convictions both to prove felon status on the possession charge and to enhance the robbery sentence, respon-

dent argues that this *Boulder* language did not necessarily describe the rule in Kentucky. Respondent argues that an intervening case decided after *Boulder*, but before Dale's arrest, limits *Boulder's* scope. Additionally, the holding in *Boulder* is arguably dicta.

Despite the respondent's claims, we think *Boulder* did establish the governing law up until the *Dale* opinion. The intervening case, *Jackson v. Commonwealth*, 650 S.W. 2d 250 (Ky.1983), is not really at all similar to *Boulder* or to the instant case. In *Jackson*, a defendant was found guilty in 1980 of being a convicted felon in possession of a handgun. This 1980 conviction rested upon defendant's previous 1976 conviction on robbery charges. In 1981, the prosecution attempted to use both the 1980 and the 1976 convictions to enhance a burglary conviction. The court allowed this even though the 1976 conviction had been used in connection with the 1980 charge, expressly noting that the case was "factually different" from *Boulder*. The *Jackson* court's ruling that *Boulder* held "merely that when a single prior felony is utilized to create an offense or enhance a punishment at the trial of the second crime so created or enhanced, it may not be used *at that trial* to prosecute the defendant under KRS 532.080," *id.* at 251 (emphasis in original), does not alter the *Boulder* holding that is of relevance here.

Similarly unpersuasive is the claim that the critical language in *Boulder* is dicta. While it is true that the *Boulder* court reversed the defendant's assault conviction, and thus did not have to address the jury's enhancement of that conviction, the court recognized that the defendant was going to be re-tried on the assault charge. In pro-

hibiting enhancement of the assault charge, then, the court was providing relevant instructions for the trial court on retrial, not merely providing an unnecessary interpretation of the law. Additionally, the language the Kentucky Supreme Court used in *Dale* clearly indicated that the court believed it was bound by *Boulder's* holding unless it chose to overrule portions of *Boulder*. At the time of Dale's trial, *Boulder* established the controlling rule of law, and the trial judge's decision to allow enhancement of the robbery charge contravened the *Boulder* decision.

### III.

■ Having determined that the Kentucky Supreme Court, in petitioner's appeal, clearly changed relevant Kentucky law, it remains to be seen whether this change and retroactive application to petitioner violated federal constitutional principles.[2] Despite the vigorous arguments of petitioner and the district court's acceptance of these arguments, it is clear beyond peradventure that the Kentucky Supreme Court did not violate the proscriptions of the *ex post facto* clause. "The *Ex Post Facto* Clause is a limitation upon the powers of the Legislature ... and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). However, Supreme Court precedent makes clear that the notion of fair warning, protected from legislative impairment by the *ex post facto* clause, is also a part of due process, so that the due process clauses of the fifth and fourteenth amendments restrict the ability of courts to retroactively apply new legal

---

**2.** Respondent argues that the question of whether the use of the two 1976 convictions violated the Constitution need not be addressed. Respondent asserts that because the three 1974 convictions were not challenged, there was sufficient evidence to support a first-degree persistent felon finding even without the 1976 convictions. We do not accept this argument. Petitioner has questioned the validity of these convictions for enhancement purposes. The determination of whether the 1974 convictions are sufficient, standing alone, to justify a first-degree persistent felony offender finding is one of

state law this court cannot make in a habeas proceeding. More importantly, the Kentucky Supreme Court in *Dale* never mentioned the 1974 cases as an alternative basis for Dale's enhanced sentence. The court seemed to assume it needed to approve the use of the 1976 convictions if the enhanced sentence was to stand. Finally, we cannot know how much, if any, reliance the jury placed on the evidence of the 1976 convictions. We cannot say that reliance upon the 1976 convictions at the enhancement stage was harmless.

principles. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Thus, if the decision violated any constitutional right, it was Dale's right to due process.

This distinction is of more than definitional significance. The types of legislative actions prohibited by the *ex post facto* clause are well defined, as the *"ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1867). While *Bouie* and *Marks* recognized that the concept of due process limits the retroactivity of changes in the law wrought by courts in much the same way that the *ex post facto* clause limits legislative changes, both cases dealt only with judicial attempts to expand the reach of criminal statutes—attempts to "impose[ ] a punishment for an act which was not punishable at the time it was committed." *Weaver,* 450 U.S. at 28, 101 S.Ct. at 964. Supreme Court precedent thus makes clear that the due process clause prohibits judicial action that unexpectedly expands the reach of statutes defining criminal activity, but it is not clear whether the due process prohibition of judicially created *ex post facto*-type re-interpretations of the law also extends to judicial actions that affect the anticipated punishment for admittedly criminal conduct.

■ We hold that the constitutional due process protections, like *ex post facto* protections, do extend to proscribe judicially enforced changes in interpretations of the law that unforeseeably expand the punishment accompanying a conviction beyond that which an actor could have anticipated at the time of committing a criminal act. While there is language in some Supreme Court cases suggesting that *Bouie* be limited to facts involving attempts to retroactively, unexpectedly expand the scope of statutes defining crimes, *see Splawn v.*

*California,* 431 U.S. 595, 601, 97 S.Ct. 1987, 1991, 52 L.Ed.2d 606 (1977); *Rose v. Locke,* 423 U.S. 48, 53, 96 S.Ct. 243, 245–46, 46 L.Ed.2d 185 (1975), none of these cases involved judicial interpretations that attempted to retroactively increase punishment. The federal courts of appeals have universally suggested that the right to due process prevents judicially wrought retroactive increases in levels of punishment in precisely the same way that the *ex post facto* clause does when the changes are produced by legislation. Rather than reading *Bouie* and *Marks* narrowly, circuit courts have typically echoed language in *Bouie* suggesting that "a state supreme court is barred by the due process clause from achieving by judicial construction a result which a state legislature could not obtain by statute." *Jordan v. Watkins,* 681 F.2d 1067, 1079 (5th Cir.1982), *vacated on other grounds, Jordan v. Mississippi,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). *See also Prater v. U.S. Parole Commission,* 802 F.2d 948, 952 (7th Cir. 1986); *Knapp v. Cardwell,* 667 F.2d 1253, 1262 (9th Cir.), *cert. denied,* 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982); *Foster v. Barbour,* 613 F.2d 59, 61–62 (4th Cir.1980).

■ The correctness of this result is further demonstrated by language in *Bouie* holding that the principle of "fair warning" that undergirds the *ex post facto* clause is also a basic component of the due process clause. Under *ex post facto* clause principles, an actor must have fair warning of the fact that his conduct is criminal and that if he is apprehended, he will suffer a specified, unalterable (for the actor's purposes) punishment. The *Bouie* Court suggested that the due process clause also guarantees "that a criminal statute give fair warning." 378 U.S. at 350, 84 S.Ct. at 1701. *Bouie* spoke in terms of "fair warning" in explaining why state courts could not be allowed to achieve by judicial interpretation what the *ex post facto* clause forbade state legislatures from achieving by legislation. It seems apparent that the scope of the "fair warning" to which one is entitled under the due process clause is

identical to that under the *ex post facto* clause.

██ Having thus established that, in the present case, the due process clause forbids any attempt by the Kentucky Supreme Court to increase Dale's punishment without providing Dale fair warning of the changed law, we must decide whether Dale received a punishment beyond that which he could properly have anticipated. Although this is a close question, we are convinced that Dale cannot maintain that he had no fair warning of the possible punishments.

Whether or not this is an accurate understanding of human behavior, the belief at the foundation of the "fair warning" component of the *ex post facto* clause, and the incorporation of its principles into the due process clause, is that the person committing an act is a rational actor. *Prater v. United States Parole Commission,* 802 F.2d at 952–53. Principles of fairness thus require that this actor, in making his decision whether to act, be fully informed as to whether this proposed action is criminal, and, if so, what type of punishment one guilty of the criminal act can expect. Armed with this information, the actor can then make a decision. Any attempts by courts or legislatures to alter the relevant considerations after the fact are prohibited. The key to our analysis thus must be what Dale could have anticipated at the time he committed the crime. *Weaver,* 450 U.S. at 30–31, 101 S.Ct. at 965 (touchstone is "the law in effect on the date of the offense.").

At the time Dale decided to rob the gas station, he was on notice that he could not only be prosecuted for an armed robbery but also that such charge would be subject to an enhanced sentence (twenty years to life) if he was convicted. Before Dale entered the gas station, armed with a handgun, the law in Kentucky clearly made such actions punishable as armed robbery. The law was also clear that one who, like Dale, had a number of prior felony convictions could have his underlying felony sentence enhanced. Nothing in the Kentucky Supreme Court's *Dale* opinion made the sentence associated with the robbery conviction more severe than Dale could have expected before committing the robbery.

██ When Dale decided to commit the crime, he had no reason to think that, if apprehended, he could not receive a twenty-five year sentence. Arguably, Dale could have anticipated an enhanced robbery sentence *or* non-enhanced convictions on both robbery and possession of a handgun by a convicted felon charges, but not both. However, for a change to run afoul of the *ex post facto* prohibition, as incorporated into the due process clause, that change must not only be retrospective, it must also "disadvantage the offender affected by it." *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), quoting *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964. Here, where petitioner was under "fair warning" that he could have received a life sentence, and the retrospective change resulted in his receiving a twenty-five year robbery sentence and a concurrent five-year possession sentence, we cannot say Dale received the type of "punishment enhancement" which would offend due process.[3]

**3.** In determining whether the addition of a possession conviction, with an accompanying five-year sentence, disadvantaged petitioner in any meaningful way, we think a profitable analogy can be made to the "concurrent sentencing doctrine." According to this doctrine, accepted by this court, an appellate court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. See *United States v. Jeter,* 775 F.2d 670 (6th Cir.1985), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986). While we are admittedly hesitant to apply this doctrine, *United States v.* *Greer,* 588 F.2d 1151, 1154 (6th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), citing *Hibdon v. United States,* 204 F.2d 834, 839 (6th Cir.1953), we do decline to review convictions when there is no possibility of adverse "collateral consequences" if the convictions stand. *United States v. Stewart,* No. 84–1084, unpub. op., 782 F.2d 1044 (6th Cir. 1985), citing *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Maze,* 468 F.2d 529 (6th Cir.1972). Thus, in *Ethridge v. United States,* 494 F.2d 351 (6th Cir.), *cert. denied,* 419 U.S. 1025, 95 S.Ct. 504, 42 L.Ed.2d 300 (1974), we declined to hear challenges to two convictions—twenty years for

The decision of the district court is RE-VERSED.

WELLFORD, Circuit Judge, concurring.

I am in accord with Part III of Judge Guy's decision and concur in the reversal of the decision of the district court for the reasons well expressed therein. I am not, however, in agreement with Part II of that decision that *Dale* necessarily "contravened the *Boulder* decision."

I write separately, then, to express my belief that the Kentucky Supreme Court's decision in *Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980), is factually distinct from this case and should not be controlling on its outcome. The statement of the same court in *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky.1986), that it was overruling *Boulder* "to the extent ... [it] is inconsistent" had no *ex post facto* effect.

In *Boulder* the prosecution established the charge of possession of a handgun by a convicted felon by using the defendant's 1976 conviction of first degree assault. This same prior felony was then used in the persistent felony offender (PFO) stage of the trial to enhance the sentence from three to five years. Finally, the same prior conviction was used a third time to enhance the sentence of a separate felony from fifteen to thirty-five years. As the court stated, "[t]he prosecutor bombarded [the defendant] by using his status as a felon against him three times." In *Dale*, the court described the *Boulder* action as "double enhancement" and "error" upon reflection.

In this case, one of Dale's several prior felony convictions was used as a predicate to establish the offense of possession of a handgun by a convicted felon and then to enhance the sentence on a robbery charge. This use or enhancement of a prior conviction is not addressed by *Boulder*, because the Commonwealth utilized a prior conviction not twice, but *three* times in the *Boulder* case. Anything expressed in *Boulder* concerning the kind of use of a prior conviction, such as occurred in the instant case, was therefore dicta, in my view.

The precise holding of *Boulder* was clearly articulated by the court:

> Specifically, this [prior felon] status may not be used to obtain a primary conviction, *then re-used* to increase the punishment for that conviction, *and then re-used again* to enhance a sentence for another primary conviction.

610 S.W.2d at 618 (emphasis added). Since this is not the situation presented in the case at hand, I would hold that Dale was not deprived of the benefit of former case law when the Kentucky Supreme Court indicated it was overruling *Boulder* if inconsistent with the *Dale* decision.

There is another basis on which the district court's decision might be reversed. There was reference in this case to a number of prior felonies. There was only one prior felony involved in *Boulder*. In this case, as distinct from the situation in *Boulder*, a single prior felony committed by the defendant is not being used "to obtain a primary conviction, then re-used to increase the punishment for *that* conviction, and then *re-used again* to enhance a sentence for another primary conviction." 610 S.W. 2d at 618 (emphasis added). In *Jackson v. Commonwealth*, 650 S.W.2d 250 (Ky.1983), the same court indicated an unwillingness to extend *Boulder* and referred to "unfortunate language" in *Boulder*.

I would find no *ex post facto* application of the law, and would reverse on this basis as well.

BAILEY BROWN, Senior Circuit Judge, dissenting.

I agree with section II of Judge Guy's opinion which holds that *Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980), applies to Dale's case but disagree with sec-

---

bank robbery and ten years for possession of bank robbery proceeds—when the petitioner could point to no disadvantage resulting from these convictions when petitioner did not contest his fifty-year murder sentence and convic-

tion. In the present case, as in *Ethridge*, petitioner has not directed us towards any "collateral consequences" accompanying his conviction on the possession charge.

tion III which holds that, nonetheless, the grant of habeas relief should be reversed because there was no denial of due process.[1] Since Judge Wellford is of the view that *Boulder* is not applicable and that, in any event, there was no denial of due process, it appears that the grant of habeas relief must be reversed.

As I read section III of Judge Guy's opinion, it holds that there was no denial of due process, even though it was actually necessary to overrule *Boulder* to approve the enhancement of Dale's punishment, because Dale is presumed to have known that, with his criminal record, his punishment for armed robbery could be enhanced. Thus Judge Guy concludes that Dale received the "fair warning" that *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977), holds due process requires.

The question is: fair warning of what? It seems to me that a correct interpretation of *Marks* and the other cases relied upon in Judge Guy's opinion is that Dale was entitled to have had fair warning of the *law that was applied to his case at trial.* Dale did not receive this warning because such law did not exist; this law came into existence when the Supreme Court of Kentucky expressly overruled *Boulder* and approved the enhancement of Dale's sentence. Judge Guy's opinion, on the contrary, holds that Dale was entitled only to fair warning of the law that could have properly been applied had the older offenses been used to support the possession charge and the newer ones to support the persistent felony offender charge. *A priori*, this does not make sense to me and, in my opinion, is not consistent with the cases relief upon by Judge Guy.

I, therefore, respectfully dissent.

---

**1.** As is pointed out in Judge Guy's opinion, the issue here was mislabeled in the district court as being an *ex post facto* issue when in truth it is a   due process issue. As also pointed out, however, we are dealing with the same body of law.