UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LEON STEVENSON,
　　　　　　*Petitioner-Appellee,*

v.

PHOEBE JOHNSON, Warden of Perry
Correctional Institution; CHARLES M.
CONDON, Attorney General of the
State of South Carolina,
　　　　　　*Respondents-Appellants.*

No. 01-7572

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
C. Weston Houck, District Judge.
(CA-99-2779-2-06)

Argued: December 4, 2002

Decided: March 27, 2003

Before WILKINSON, WILLIAMS, and MOTZ, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** William Edgar Salter, III, OFFICE OF THE ATTOR-
NEY GENERAL, Columbia, South Carolina, for Appellants. Andrew
David Grimes, ANDREW D. GRIMES, P.A., Summerville, South
Carolina, for Appellee. **ON BRIEF:** Charles M. Condon, Attorney
General, John W. McIntosh, Chief Deputy Attorney General, Donald

J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Phoebe Johnson, Warden of the Perry Correctional Institution,[1] appeals from a district court's award of relief to Leon Stevenson, a South Carolina inmate, on his petition pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp. 2002). The district court granted relief on Stevenson's claim of ineffective assistance of counsel, premised on his trial counsel's failure to raise a double jeopardy objection at trial. Concluding that the district court erred, we reverse and remand with instructions to dismiss the petition.

I.

On April 4, 1993, police officers Munoz and Steadman responded to a report of a domestic violence incident in Spartanburg County, South Carolina, involving Stevenson and his wife. Arriving at the scene, it appeared to Munoz that Stevenson's wife had been struck near her left eye. Munoz asked her what had happened, and she responded that Stevenson had hit her. Munoz and Steadman then attempted to arrest Stevenson in his home.

The district court described the events of the next few moments as follows:

> [P]etitioner was sitting on a couch in his living room when he was placed under arrest. As one officer grabbed the peti-

---

[1]Johnson will be referred to throughout this opinion as "the State."

tioner's left arm and attempted to handcuff him, the peti-
tioner rose from the couch. The other officer grabbed the
petitioner's right arm and they all fell over a coffee table.
During this struggle, the petitioner managed to get one of
the officer's guns and fire four shots. One officer stated that
he heard the gun shots as they were falling. The shots struck
one officer [Steadman] in the knee and the other [Munoz]
in the chest. In addition, the petitioner accidentally shot
himself.

(J.A. at 94.)

## II.

A Spartanburg County grand jury charged Stevenson with two
counts of assault and battery with intent to kill[2] and two counts of
resisting arrest. After a jury trial, Stevenson was found guilty on all
counts. He was sentenced to a term of ten years imprisonment on each
of the four charges, the terms to run consecutively.

Stevenson thereafter appealed to the Supreme Court of South Caro-
lina. In that appeal, his counsel filed an *Anders* brief, together with
a motion to be relieved from representation. Stevenson filed supple-
mental materials pro se. The state Supreme Court dismissed the
appeal and granted counsel's motion to be relieved on December 7,
1995.

Stevenson filed an application for post-conviction relief (PCR) in
the state trial court on February 2, 1996. He alleged in that application
that his trial counsel had been ineffective in: (1) failing to object to
the imposition of consecutive sentences on the ground that the sen-
tence Stevenson ultimately received was illegal under S.C. Code Ann.
§ 17-25-50,[3] and (2) failing to object to his convictions and sentences

---

[2]Although Stevenson was initially charged with assault and battery
with intent to kill ("ABIK"), he was actually convicted of the lesser-
included offense of assault and battery of a high and aggravated nature
("ABHAN").

[3]Section 17-25-50 states that

for ABHAN and resisting arrest on double jeopardy grounds. In support of his second argument, Stevenson asserted that his trial counsel should have made a double jeopardy objection based on *State v. Hollman*, 102 S.E.2d 873 (S.C. 1958), in which the state Supreme Court held that a defendant could not be convicted of, and punished separately for, assault on an officer and resisting arrest because the defendant's "assault upon the officer was the essence of, and inseparate from, his resistance of arrest." *Id.* at 884. Stevenson's application was denied by the state trial court on March 14, 1997. The state trial court held that § 17-25-50 was inapplicable, that Stevenson's counsel had not performed deficiently, and that Stevenson's sentences did not constitute double jeopardy.

Stevenson then petitioned the state Supreme Court for a writ of certiorari, raising only the double jeopardy issue. *See Stevenson v. State*, 516 S.E.2d 434, 436 n.1 (S.C. 1999). The state Supreme Court granted certiorari and affirmed the state trial court's denial of Stevenson's PCR application on the ground that Stevenson's trial counsel was not ineffective for failing to raise a double jeopardy objection. The court held that under the "same elements" test in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that "the test to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not"), Stevenson's convictions and sentences did not violate the Double Jeopardy Clause. The court rejected Stevenson's argument that *Hollman* compelled a different result, because *Hollman* applied an "incorrect analysis" to the double jeopardy question.[4] *Stevenson*, 516

---

In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and distinct offenses.

S.C. Code Ann. § 17-25-50.

[4]Although the *Hollman* opinion did not indicate explicitly that it was relying on the Double Jeopardy Clause — either state or federal — the state Supreme Court in *Stevenson* described that case's holding as having been based on the Double Jeopardy Clause. *See Stevenson*, 516 S.E.2d at 199 ("The *Hollman* Court held that convictions for resisting arrest and ABHAN constituted a violation of the Double Jeopardy clause.").

S.E.2d at 437. Accordingly, the court "expressly overrule[d]" *Holl-man*. *Id.*

On August 23, 1999, Stevenson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 in the United States District Court for the District of South Carolina. He argued in the petition the same grounds he had asserted in his original state PCR application — that his trial counsel was ineffective in failing to object under § 17-25-50 to the consecutive sentences imposed on him, and in failing to raise double jeopardy objections to his convictions and sentences.[5] On August 17, 2001, the district court entered an order granting habeas relief only on Stevenson's double jeopardy claim,[6] and ordered the state trial court to re-sentence Stevenson in accordance with its opinion. (J.A. at 106.) The State timely noted this appeal.

### III.

We review de novo the district court's decision to grant Stevenson habeas relief. *Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002). Because the state Supreme Court adjudicated the merits of Stevenson's double jeopardy claim, federal court "review of its decision is 'limited by the deferential standard . . . set forth in [28 U.S.C.A.] § 2254(d), as interpreted by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000).'" *Id.* (parallel citations omitted) (quoting *Bell v. Jarvis*, 236 F.3d 149, 157 (4th Cir. 2000) (en banc), *cert. denied, Bell v. Beck*, 122 S. Ct. 74 (2001)). Under that standard, "federal habeas relief may not be granted unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (quoting § 2254(d)(1)); *see also Lockyer v. Andrade*, ___ U.S. ___, 2003 WL 728766, at *17 (March 5, 2003).

To obtain relief on a claim of ineffective assistance of counsel, a petitioner must show both (1) deficient performance and (2) preju-

---

[5]For ease of reference, we will henceforth refer to Stevenson's ineffective assistance of counsel claim premised on counsel's failure to raise a double jeopardy objection as the "double jeopardy claim."

[6]The district court did not grant relief on Stevenson's § 17-25-50 claim, and he has not sought to appeal that decision.

dice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The State argues that the state Supreme Court's resolution of Stevenson's double jeopardy claim was not contrary to, or an unreasonable application of, clearly established federal law because trial counsel's performance was not deficient and because Stevenson cannot establish prejudice. Even assuming that counsel's performance was deficient, we agree with the State that Stevenson cannot show prejudice under the Supreme Court's holding in *Lockhart v. Fretwell*, 506 U.S. 364 (1993), and thus that the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

## A.

In *Fretwell*, the Supreme Court addressed a similar ineffective assistance of counsel claim raised in a § 2254 petition. The issue there was "whether counsel's failure to make an objection in a state criminal sentencing proceeding — an objection that would have been supported by a decision which subsequently was overruled — constitutes 'prejudice' within the meaning of . . . *Strickland*." *Id.* at 366. Fretwell, an Arkansas inmate, was convicted of capital felony murder in Arkansas state court. During the penalty phase of the trial, the State argued that two aggravating factors were present: (1) the murder was committed for pecuniary gain; and (2) the murder was committed to facilitate Fretwell's escape. Fretwell argued in his § 2254 petition that his counsel was ineffective in failing to object to the death sentence imposed on him on the ground that the "pecuniary gain" aggravating factor duplicated an element of the underlying felony in his capital felony-murder conviction — robbery — and the sentence was therefore unconstitutional. At the time of Fretwell's trial and sentencing, a decision of the Eighth Circuit Court of Appeals held that a death sentence is unconstitutional if an aggravating factor on which it was based duplicates an element of the underlying felony, because that factor does not genuinely narrow the class of persons eligible for the death penalty. *See Collins v. Lockhart*, 754 F.2d 258 (8th Cir. 1985), *overruled by Perry v. Lockhart*, 871 F.2d 1384 (8th Cir. 1989).

The district court granted Fretwell habeas relief and conditionally vacated his death sentence. The Eighth Circuit affirmed, although it had two years earlier overruled *Collins* in *Perry*. The Eighth Circuit reasoned that the trial court would have been bound to follow its deci-

sion in *Collins*, had counsel raised the issue at the time of trial. Accordingly, the Eighth Circuit remanded with instructions for the district court to sentence Fretwell to life imprisonment.

The Supreme Court reversed. The Court noted that

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

*Fretwell*, 506 U.S. at 369 (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)). The Court observed that under the two-component test for ineffective assistance of counsel, "a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). Because reliability and fairness are the touchstones of this inquiry, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Id.* Addressing the specifics of the case before it, the Court concluded that even if an objection by Fretwell's lawyer would have led the trial court to follow *Collins*, subsequently overruled by the Eighth Circuit, counsel's error only "would have deprived [Fretwell] of the chance to have the state court make an error in his favor." *Id.* at 371 (internal quotation marks omitted). Accordingly, the Court held, "[t]he result of the sentencing proceeding . . . was neither unfair nor unreliable," and Fretwell's right to effective assistance of counsel therefore was not impinged. *Id.*

Here, as in *Fretwell*, if Stevenson's counsel had raised a double jeopardy objection based on *Hollman* at trial, the state trial court, acting on the basis of the law at the time, might have upheld the objection. *See Stevenson*, 516 S.E.2d at 437 ("Under *Hollman*, [Stevenson's] convictions for resisting arrest and ABHAN constitute a violation of the Double Jeopardy Clause."). That possibility, however, does not suffice to demonstrate prejudice under *Strickland* because Stevenson cannot show that the result of his trial was in fact

unfair or unreliable as a result of his counsel's failure to object. That is, Stevenson's counsel's failure did not "deprive[ ] him of any substantive or procedural right to which the law entitle[s] him." *See Williams v. Taylor*, 529 U.S. 362, 392 (2000) (discussing the holding in *Fretwell*). Rather, as the state Supreme Court has made clear, *Hollman*'s holding was incorrect, and if the trial court had upheld an objection on that basis, it would have made an error in Stevenson's favor to which he was not entitled. *Id.* ("[G]iven the overriding interest in fundamental fairness, the likelihood of a different outcome attributable to an incorrect interpretation of the law should be regarded as a potential 'windfall' to the defendant rather than the legitimate 'prejudice' contemplated by our opinion in *Strickland*.").

## B.

Stevenson argues, however, that the *Fretwell* analysis cannot be applied in his case. He asserts that *Fretwell* is inapplicable where counsel's error deprives a defendant of a procedural or substantive right, *cf. Fretwell*, 506 U.S. at 372 ("[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him"), and that his consecutive sentences for resisting arrest and ABHAN violate his right, guaranteed by the Due Process Clause, to be sentenced under the law as it stood at the time of his trial.

Stevenson cites *Marks v. United States*, 430 U.S. 188 (1977), in support of the proposition that he was denied a right guaranteed by the Due Process Clause. In *Marks*, the Supreme Court addressed convictions for interstate transportation of obscene materials. When the petitioners' conduct occurred, the narrow definition of obscenity from *Memoirs v. Massachusetts*, 383 U.S. 413 (1966), applied. Before their trial, however, the Supreme Court expanded the obscenity definition in *Miller v. California*, 418 U.S. 15 (1973). The trial court instructed the jury under the later, expanded definition, and the petitioners were convicted. The petitioners argued in the Supreme Court that *Miller* "unforeseeably expanded the reach of the federal obscenity statutes," and the Court agreed. The Court held that application of the expanded *Miller* definition violated Due Process because it ignored the petitioners' "right to fair warning of that conduct which will give rise to criminal penalties." *Marks*, 430 U.S. at 191; *see also Bouie v. City of*

*Columbia*, 378 U.S. 347, 353-54 (1964) ("[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, . . . [and] [i]f a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.").

Stevenson argues that *Hollman* was the law at the time of his offense (although, as in *Marks*, it was subsequently changed), and his sentences therefore violate his constitutionally protected expectation to be sentenced in accordance with its holding. *Cf. Helton v. Fauver*, 930 F.2d 1040, 1045 (3d Cir. 1991) (noting that while "*Bouie* and *Marks* were concerned with the ex post facto construction of substantive criminal statutes," the principle "applies equally to after-the-fact increases in the degree of punishment"); *Dale v. Haeberlin*, 878 F.2d 930, 934 (6th Cir. 1989) (holding that "constitutional due process protections, like *ex post facto* protections, do extend to proscribe judicially enforced changes in interpretations of the law that unforeseeably expand the punishment accompanying a conviction beyond that which an actor could have anticipated at the time of committing a criminal act").

We have held that "[t]he essence of the due process argument in *Marks* was that the new definition of obscenity was unforeseeable." *United States v. Ellen*, 961 F.2d 462, 466 (4th Cir. 1992); *id.* ("*Marks* turned on the fact that, at the time of the conduct for which they were charged, '[t]he defendant[s] could not suspect that [their] actions would later become criminal.'" (quoting *Osborne v. Ohio*, 495 U.S. 103, 117 (1990))). In this case, at the time of Stevenson's offense, the Supreme Court had expressly (and repeatedly) adopted the *Blockburger* "same elements" test for assessing asserted violations of the Double Jeopardy Clause in a single prosecution. *See, e.g.*, *Grady v. Corbin*, 495 U.S. 508, 516 (1990) (affirming *Blockburger* test for single prosecution of two offenses), *overruled on other grounds by United States v. Dixon*, 509 U.S. 688, 704-12 (1993);[7] *Blockburger*,

---

[7]The Supreme Court in *Grady* affirmed the *Blockburger* test's applicability to double jeopardy challenges where the charged offenses are

284 U.S. at 304. Further, while it had not yet explicitly overruled *Hollman*, the state Supreme Court had recognized and applied the *Blockburger* test in its own opinions addressing double jeopardy challenges in single prosecutions. *See, e.g.*, *State v. Owen*, 424 S.E.2d 473, 475 (S.C. 1992) (applying *Blockburger*); *Jivers v. State*, 406 S.E.2d 154, 156 (S.C. 1991) (applying *Blockburger* and *Grady*).[8]

---

brought in a single prosecution. *Grady* also added a proscription on *subsequent* prosecution of offenses if, "to establish an essential element of [the charged offense], the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 510. The subsequent prosecution proscription was overruled in *Dixon*, 509 U.S. at 704, three years after the *Grady* decision, but in any event neither that aspect of *Grady* nor the South Carolina cases that followed its rationale are relevant here because Stevenson was prosecuted only once.

[8]Stevenson suggests that the holding in *Hollman* was based on an interpretation of the Double Jeopardy Clause in the South Carolina Constitution, and therefore both the United States Supreme Court's double jeopardy decisions and the state Supreme Court's double jeopardy decisions after *Hollman* are inapposite because they address only the federal provision. As noted *supra* note 4, the *Hollman* opinion does not indicate explicitly that it relied on the federal or state Double Jeopardy Clause. Because at the time *Hollman* was decided the federal Double Jeopardy Clause was inapplicable to the states, *see Palko v. Connecticut*, 302 U.S. 319, 328 (1937), *overruled by Benton v. Maryland*, 395 U.S. 784, 787 (1969), we assume that *Hollman* interpreted the South Carolina Double Jeopardy Clause, although it relied on both South Carolina and federal double jeopardy cases. After the federal Double Jeopardy Clause was made applicable to the states, however, the state Supreme Court has never suggested that the South Carolina provision sweeps more broadly than the federal provision. Rather, the state Supreme Court has (and had before Stevenson's offense) consistently analyzed double jeopardy claims under the *Blockburger* standard without distinguishing between the nearly identical federal and state provisions. *See, e.g.*, *State v. Lawson*, 305 S.E.2d 249, 250 (S.C. 1983) (stating that "[t]he state and federal constitutions guarantee freedom from double jeopardy and protect a criminal defendant from punishment for both an offense and a *lesser-included* offense when, as here, they are established by the very same acts") (emphasis added); *State v. Greuling*, 186 S.E.2d 706, 710 (S.C. 1972) (concluding that no double jeopardy problem existed because the

Thus, based on its clear adoption by the United States Supreme Court and the state Supreme Court, application of the *Blockburger* test to Stevenson's offenses was foreseeable.[9] Accordingly, Stevenson cannot show prejudice resulting from any error by his counsel, and the state Supreme Court's rejection of Stevenson's ineffective assistance claim was not contrary to, or an unreasonable application of, federal law.

---

*Blockburger* test was met, over a dissent arguing that the state provision should be interpreted more broadly than the federal provision); *see also State v. Dobson*, 309 S.E.2d 752 (S.C. 1983) (treating federal and state Double Jeopardy Clauses as coextensive); *State v. Prince*, 301 S.E.2d 471 (S.C. 1983) (same); William S. McAninch, *Unfolding the Law of Double Jeopardy*, 44 S.C. L. Rev. 411, 418 (1993) (noting that since the Fifth Amendment's Double Jeopardy Clause was held applicable to the states in 1969 "the South Carolina courts have never interpreted the state provision independently of its federal counterpart").

[9]We reject Stevenson's argument that *Hollman*'s validity was "reaffirmed" (Appellee's Br. at 22) in *State v. Walsh*, 388 S.E.2d 777 (S.C. 1988), *overruled by State v. Easler*, 489 S.E.2d 617 (S.C. 1997). In *Walsh*, the state Supreme Court held that a defendant could not be convicted of both ABIK and the South Carolina offense of pointing a firearm. On rehearing, the court held that even though a *Blockburger* "same elements" analysis revealed no double jeopardy problem because the two offenses were composed of different elements, the intent of the legislature not to permit cumulative punishment for the two offenses when committed in the same act was clear. *See id.* at 780. This was a straightforward application of double jeopardy law as elucidated by the Supreme Court, entirely consistent with *Blockburger*. *See Garrett v. United States*, 471 U.S. 773 (1985) ("[T]he *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history"); *see also Walsh*, 388 S.E.2d at 779-80 (quoting *Garrett* in finding the *Blockburger* rule inapplicable because of clear legislative intent). Thus, *Walsh* stands only for the uncontroversial proposition that where legislative intent is otherwise clear, the *Blockburger* analysis does not control. *See Easler*, 489 S.E.2d at 623 n.14 (noting that "the order on rehearing in *Walsh* makes clear that the basis for the court's finding of a double jeopardy violation rests in its interpretation of the legislative intent that a single occurrence of [ABIK] and pointing a firearm were not intended to be subject to cumulative punishment").

## IV.

For the reasons stated above, the judgment of the district court granting relief is reversed, and the case is remanded with instructions to dismiss the petition.

*REVERSED AND REMANDED*