NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0433n.06

Nos. 17-1724, 17-1962

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SHAWN PEARSON (17-1724); DWAYNE | ) | COURT FOR THE EASTERN |
| DUPREE (17-1962), | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:     BATCHELDER, KETHLEDGE, and WHITE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Dwayne Dupree, Shawn Pearson and Kiara Hobbs planned and executed three robberies on Dollar General stores.  They used guns and threats of violence.  All three were indicted on three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and three counts of aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  Hobbs cooperated with the government and testified against Dupree and Pearson at trial, and a jury convicted them on all counts.  They now lodge two challenges: that the district court should not have admitted expert opinion testimony that placed their cell phones near the locations of the robberies, and that there was not sufficient evidence to sustain their convictions.  For the following reasons, we AFFIRM the district court.

I.

Dupree, Pearson, and Hobbs were part of a robbery "squad" they called One Big Family or OBF. OBF orchestrated three gunpoint robberies of Dollar General stores in Detroit, Michigan, between December 2014 and March 2015, with the help of other cohorts.

All three robberies followed essentially the same approach: Dupree, Pearson, and Hobbs would meet beforehand—typically at Dupree's house on Strasburg Street—with any other accomplices to plan the robberies. Hobbs would serve as lookout, sometimes with the aid of Dupree, either within the Dollar General stores or outside the stores while sitting in Dupree's silver Ford Taurus. Some combination of Dupree, Pearson, and other accomplices would enter the stores wearing masks and gloves. They would threaten employees using guns Dupree provided and demand money from the registers and safes. After completing each robbery, the participants from that robbery would reconvene somewhere—again, typically at Dupree's house on Strasburg Street—to divide the money. All in all the robbers collected $3700—$1500 from the first robbery, $1200 from the second, and $1000 from the third.

The robberies, though successful, were anything but expertly executed. All three robberies were recorded on in-store surveillance cameras and OBF left behind numerous clues and leads for police. For example, OBF orchestrated the first two robberies on the very same Dollar General store three weeks apart and the robbers wore readily identifiable clothing that was clearly evident in the surveillance footage. Specifically, during the first robbery, Hobbs, who was pretending to be a customer, stood near the registers during the entire robbery even though the masked robbers ordered customers to get on the ground, a directive that customers near her followed. She wore a grey New York Jets sweatshirt (in Detroit). On its own, this might not have raised flags; however, during the second robbery (on that same Dollar General store), Pearson—as a masked gunman—

wore the same grey New York Jets sweatshirt. During the third robbery, Hobbs, who again pretended to be a customer, could be seen on surveillance video casing the store for approximately 45 minutes before the masked gunmen entered.

Pearson and Dupree both fired their guns during the robberies, which left important evidence behind at the crime scenes. During the second robbery Pearson fired two shots towards a manager while fleeing the store, missing the manager by two or three feet. And during the third robbery Dupree fired his gun at the ceiling. The police recovered two shell casings and bullets from the second robbery and a shell casing from the third.

In addition to the evidence from the crime scenes, police caught a break when they responded to a phone call about a fight involving a person with a weapon. The person in question was Pearson and police seized from him a Glock .45. Ballistics testing connected the recovered Glock to the two shell casings and one of the bullets from the second robbery.[1] Pearson later admitted that the gun was his and that he had obtained that gun around December 14, 2015, a date prior to any of the Dollar General store robberies.

As the investigation developed, police recovered even more evidence during a search of a house on Bradford Street in which Dupree was living with his girlfriend. From Dupree's nightstand, the police recovered a Springfield .40 caliber handgun that ballistic tests matched to the shell casing recovered from the third robbery, a Michigan ID card for Dupree with his old Strasburg Street address, an eviction notice for the Strasburg Street house from December 2014, and paperwork for a 2005 Ford four-door vehicle registered to Dupree's girlfriend, Anarika Dafney, also known as "OBF first lady."

---

[1] The remaining bullet produced an "inconclusive" result when tested.

Further aiding the investigation was the fact that OBF had not been shy about flaunting their new-found riches. A day after the second robbery, Hobbs uploaded pictures to her Facebook account of herself, Dupree, Pearson, and a fourth accomplice flashing the money they had taken. Dupree then posted comments below the photograph in which he identified Pearson as one of the persons in the photograph and bragged that the "[w]hole team eattin over hear." Dupree boasted on his own Facebook account that he "put my whole squad on we ONE BIG FAMILY."

The grand jury charged Dupree, Pearson, and Hobbs with various crimes for their parts in the commissions of the robberies. Hobbs agreed to testify at trial against Dupree and Pearson and eventually pled guilty with the benefit of a plea agreement. Dupree and Pearson opted to proceed to trial on the charges against them—three counts of aiding and abetting interference with commerce by robbery (Hobbs Act robbery) in violation of 18 U.S.C. § 1951(a) and three counts of aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence (the Hobbs Act robberies) in violation of 18 U.S.C. § 924(c).[2]

Prior to trial, the district court made an evidentiary ruling relevant to the instant appeal. Dupree and Pearson had moved for a *Daubert*[3] hearing and to exclude the anticipated opinion testimony of an FBI agent regarding historical cell-site location analysis that placed Dupree and Pearson in the general area of the Dollar General stores when the robberies took place. The district court granted the motion for a *Daubert* hearing and, following an extensive hearing, found that the cell-site location analysis generally satisfied *Daubert*, and denied Dupree and Pearson's motion to

---

[2] Dupree was also indicted on an additional count of aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and one count of carjacking, in violation of 18 U.S.C. § 2119. However, Pearson successfully moved to sever those counts from his and Dupree's joint trial. Thus, those counts were not submitted to the jury and are not at issue in this appeal.

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

exclude the FBI agent's opinion testimony.[4] The district court, however, ordered that the proposed testimony be prefaced by a "critical disclaimer" that "the use of a particular cell site didn't mean that the phone was right at the tower or any particular spot near the tower." Thus, the FBI agent was permitted to testify only "that the phone was within the service areas of the[] particular towers, and to offer his opinion about the scope and range of the service areas in this general sense and consistent with the way it was done in [*United States v. Hill*, 818 F.3d 289 (7th Cir. 2016)]."

After a six-day trial, the jury convicted Dupree and Pearson on all counts. Dupree and Pearson now appeal, challenging both the ruling of the district judge to admit evidence of cell-site location information and their convictions based on the sufficiency of the evidence against them. We AFFIRM.

II.

We review for abuse of discretion a district court's evidentiary rulings concerning the admission of expert testimony. *United States v. LaVictor*, 848 F.3d 428, 440 (6th Cir. 2017).

Dupree and Pearson assert that the district court erred for a variety of reasons by admitting expert opinion testimony by FBI agent Joseph Jensen regarding how the cell-site analysis placed phones linked to them in proximity to the robberies. But in this instance we need not inquire into whether the cell-site location data was admitted in error because, even assuming that the district court erred by admitting the evidence, the error would unquestionably be harmless given the overwhelming evidence that Pearson and Dupree committed the robberies.

At trial, Hobbs testified that Pearson and Dupree participated in each robbery and detailed their respective roles, which alone provided enough evidence for the jury to convict. But beyond

---

[4] The district court also concluded that the agent was qualified to provide opinion testimony under Federal Rule of Evidence 702. Dupree and Pearson have not challenged that conclusion, nor have they sought at any point to exclude or suppress the cell-site location evidence on any other grounds.

this, the prosecution presented: evidence linking Dupree to a silver Ford Taurus, the type of car seen outside the Dollar General store before the December and January robberies; Facebook photographs and posts connecting Hobbs, Pearson, and Dupree; eyewitness testimony identifying Pearson's tattoos on his hands and wrists as matching the tattoos of one of the robbers; and ballistics evidence tying Pearson's gun to the shots fired during the January robbery and Dupree's gun to the shot fired during the March robbery. With all of this, the jury undoubtedly would have reached the same verdict absent the cell site location evidence.[5]

## III.

The defendants claim that the evidence was insufficient to support certain of their convictions and that the district court erred by denying their motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c). We review for sufficiency of the evidence de novo, asking whether, upon viewing all of the evidence in the light most favorable to the prosecution, *any* rational juror could have found all of the elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Dupree and Pearson carry a "very heavy" burden "because the reviewing court does not judge the credibility of witnesses or weigh evidence, and it draws all reasonable inferences in the government's favor." *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005) (citations omitted).

---

[5] The extremely limited nature of Agent Jensen's testimony regarding the cell-site location data further supports our conclusion that his testimony, even if admitted in error, could be nothing but harmless. Agent Jensen explained that he could not identify who used the phones around the time of the robberies, and could not pinpoint a particular phone to a specific location in relation to the tower, just to a general area. He noted that the Strasburg and Bradford addresses linked to Dupree fell within the same coverage area as the Seven Mile Road Dollar General store and so his analysis was as consistent with Dupree's making a phone call from his house as it was with his making a call at the scene of the crime. Jensen even explained that the illustration he used to demonstrate which cell towers the phones used during the relevant periods were to demonstrate only the general principles of how cell towers worked and did not depict the exact areas of coverage of the tower. In the end, Agent Jensen summarized his testimony so there could be no misunderstanding:

> Q: All you really can tell us is, according to your investigation, that a particular phone used a particular tower within a general area?
>
> A: That's it.

Both Dupree and Pearson contend that the prosecution presented insufficient evidence to convict them of some of the Hobbs Act and firearms crimes. The Hobbs Act punishes a person who "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation" of the Act. 18 U.S.C. § 1951(a). Thus to prevail under the Act, the government "must prove two elements: (1) interference with interstate commerce (2) in the course of a substantive criminal act." *Ostrander*, 411 F.3d at 691 (citation omitted). "If the victim of the robbery or violence is a business entity, the effect on interstate commerce need only be *de minimis*." *Id*.

Dupree and Pearson contend that the government did not show that they were *personally involved* in the robberies. Specifically, Pearson claims that the government did not show that he was involved in any of the three robberies absent "inferences piled willy-nilly upon one another." Dupree argues that the government did not show that he was involved in the December 2014 robbery alleged in counts three and four, but showed only that he was "merely present at the time of the crime."[6]

Dupree and Pearson also contend that the prosecutor presented insufficient evidence to convict them of aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence (the Hobbs Act robberies) in violation of 18 U.S.C. § 924(c). They argue that except for Hobbs's testimony, there was no evidence upon which the jury could have found guilt beyond a reasonable doubt. To be convicted of violating § 924(c) under an aiding and abetting theory, a defendant must have advance knowledge that the plan would include a firearm. *Rosemond v. United States*, 572 U.S. 65, 77-78 (2014). "This advance-knowledge requirement

---

[6] Dupree does not contest his convictions for the January and March 2015 robberies charged in counts five through eight.

does not mean that a defendant must know in advance that his confederate will *actually use* the gun." *United States v. Nicholson*, 716 F. App'x 400, 411 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1337 (2018), and *cert. denied sub nom. Johnson v. United States*, 138 S. Ct. 1582 (2018). Instead, the government must show that the defendant "decided to join in the criminal venture . . . with full awareness of its scope . . . including its use of a firearm." *Rosemond*, 572 U.S. at 77-78.

Hobbs's testimony alone forecloses these sufficiency arguments. "The uncorroborated testimony of an accomplice alone may support a conviction." *United States v. Clark*, 18 F.3d 1337, 1343 (6th Cir. 1994) (citing *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990)). Hobbs was the lookout for all three robberies. She testified that Pearson participated in each robbery, carried a gun during each robbery, fired his gun twice at the store manager during the January 2015 robbery, and took a share of the money from each robbery. Hobbs also testified that Dupree planned the robberies, supplied the guns for the robberies, and discharged a gun during the March robbery.

Dupree and Pearson attempt, as they did at trial, to attack Hobbs's credibility based on her cooperation with the government. But, "[s]ufficiency-of-the-evidence appeals are no place . . . for arguments regarding a government witness's lack of credibility." *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010) (alterations in original) (internal quotation marks omitted) (quoting *United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir. 2000)). "This Court has repeatedly held that a juror is free to weigh the testimony of a co-conspirator who pleads guilty and testifies pursuant to a cooperation agreement with the United States." *Id.* (internal quotation marks omitted) (quoting *United States v. Fonseca*, 193 F. App'x 483, 491 (6th Cir. 2006)). Hobbs's credibility, or lack thereof, is not a proper issue for our consideration, and her uncorroborated testimony alone can—and indeed does—support Dupree's and Pearson's convictions. *Id.* And,

as discussed, Hobbs's testimony was corroborated by other evidence, including eye-witness testimony, surveillance footage, OBF's social-media activity, and forensic ballistics testing.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district.